Good morning, Your Honors. My name is Maziar Razia, and I'm here on behalf of the petitioner, Mr. Reyes-Escobar. This is an immigration matter involving the settlement agreement in the American Baptist Churches v. Thornborough matter. The issue presented is whether the government can deny benefits to a registered class member some 15 years after the benefits vested because he left the country for three weeks in 1993 to visit his sick mother, but the government did not approve his request for permission, noting that his circumstances did not warrant favorable discretion. Right at the outset, let me point out two facts that I think are important to you, or the issue that's more important. The plain text of the agreement, as this Court noted in Charlie Garcia, is that all Guatemalans in the U.S. as of October 1st are class members, October 1st, 1990. And as the Court noted in that case, that is automatic and mandatory for all Guatemalans. But that's not enough to be eligible for the benefits. You have to have registered, and to register, the subset of class members were entitled to certain benefits, including a de novo asylum adjudication. They had to have registered as a class member and notified the INS in writing from July 1st to December 31st, 1991. The paragraph 2 disqualifier that the government has argued and relies on on page 32 clearly says, class members apprehended at the time of entry. It doesn't say registered class members. So as this issue has been raised in the First Circuit before, we argue that, for the first thing, once the class member registered during that registration period, then the benefits have vested. And there's a very good reason why the settlement agreement was written in this way, I believe. Because the ABC agreement was preliminarily approved in December of 1990, and the registration period did not begin until seven months later, and it included people who, Guatemalans, was a very general group of people who had come to the United States before October of 1990. In order to prevent fraud, they had included this section in there. So between the period of December of 1990, when the preliminary agreement was approved, and until December of 1991, when the registration period ended, there would be no incentive for people outside the U.S., Guatemalans outside the U.S., to come to the U.S. and try to take benefit of this. But once the agreement is vested, the proof is vested, the subset had registered, then there's absolutely no reason to have had this section applied, because asylum applicants were eligible to travel. They could have gone outside the U.S. Well, okay, you want to extend fluty. But even if we did extend fluty to ABC class members, how does REA satisfied the third fluty factor, which considers whether he had to procure documents for the visit? Because they denied him, he knew he didn't have them, and he went ahead anyway. So even if we extended fluty to ABC class members, how would your client, how would he satisfy the third factor of fluty? Fluty stood for brief, casual, and innocent trip abroad. And the No, I'm asking you, the third says you have, it has to do with travel documents. He, they told him he needed it, he was denied, and they didn't, wouldn't give him any. How does he satisfy the third factor? Tell me on these facts, how would he satisfy, or do you just want to extend fluty factors one and two? No, no, no. No, I think fluty applies in all respects to this case, because fluty, as How does he satisfy the third factor? The third factor, as long as the trip was, I don't think they had to have permission to leave the United States under fluty. Fluty doesn't require that you have to have advanced permission to leave the U.S. Fluty was codified to apply to individuals who It says there's three factors in fluty. The fluty doctrine provides that a legal permanent resident's extortion outside the United States may not interrupt his residency period depending on three factors. One, the length of the alien's absence. Two, the purpose of the visit. And three, whether the alien must produce travel documents. He had to produce travel documents. He didn't do that. So how does he satisfy that? He knew that. They told him you can't go. But as fluty had been applied to suspension of deportation applicants years before that, and in that respect, they never had Well, I don't think we're getting anywhere in that question. Let me take you to another question. Explain why you believe your client has shown reasonable cause for failing to appear for his 1994 hearing. Well, we have basically the case of administrative We have Salvador Morales, which is a BIA case, which we cited in our brief. And that case clearly says that any registered ABC class member is eligible The proceedings against them should be administratively closed. Now, here the court went forward in absentia and ordered him excluded, but we are arguing that it had to have been administratively closed based on this case ab initio. Therefore, there is no issue of whether he should have There should be an exclusion order. Our argument is and remains that from the outset, those proceedings were should have been admin closed and the exclusion order is invalid. Now, getting back to the issue of admission, I mean, entry at the time of apprehended at the time of entry, the government here detained the respondent, the petitioner. At the time he came back at LAFs, and at the time when they detained him, in fact, the record shows at AR-71, they basically told him, you are detained. It's in writing. It's in the record. Then again, in the notice to the airline that they gave on the same day that he was stopped, and that's an administrative record 87, they said, quote, Now, paragraph 17 of the ABC agreement clearly provides that registered ABC class members cannot be detained unless they're aggravated felonies. Here, the respondent and the government will concede, has no criminal record, has never been convicted of any crimes. So by even detaining him at the LAX, they violated the terms of the agreement. Paragraph 17 is clear on its face. Second, the issue of entry that But what follows from that? Even if you consider this apprehension to be a detention, what follows from that? Why does that mean he wins? Well, it means that they shouldn't have stopped him to begin with, because they couldn't Second argument, well, the government makes a point that There's still the problems of he left the country and came back, right? Yes. I mean, if he hadn't left the country or if the government had given him his advance parole, obviously we would not be here. I guess what I'm asking is suppose for the sake of argument the government had simply entered a record that said he left the country and he came back and he didn't have travel documents, and they didn't detain him. They just let him go. Okay. Wouldn't we still have the same issues here today? Probably not, because he was an apprehender. If the government had apprehended him but let him go, if the facts were the same as they are, save for the fact that they didn't detain him, they just said go on your way. In other words, I don't see that the act of detaining him for a time at the point of entry gives you a basis on which you prevail on the underlying argument. Well, I guess the question, again, would be then what's apprehension and what's detention and what the difference is between the two. And that's something I guess the Court would have to determine what constitutes one and what not the other. Maybe I could put it a different way. Take another hypothetical where the person wasn't qualified ultimately under the ABC settlement, but he was detained. That would be wrong. He shouldn't have been because he was registered. Would that mean, therefore, that he qualifies simply because the government made a mistake? No, I don't disagree. I mean, I think the Court's correct. He wouldn't be. But that's, I guess, I don't understand. I don't see the fact that he was detained when he reentered to be of much consequence, really. The final argument that I want to make, and I know there's some coming up, I don't even think there was an entry here because he was paroled in. And paroled is not entry. So even assuming that this statute, the provisions of paragraph 2 disqualify apply to this case, as we argue that they don't, I still don't think there was an apprehension. I mean, I don't think there's an entry because he was paroled in. And, therefore, we find that it's not applicable. Finally, I see my time is coming up, but I think what's the problem here is that there's something fundamentally unfair in denying benefits to an individual who is otherwise eligible. And he takes this trip abroad to visit his sick mother. They deny him the permission, even though he was eligible for it, and basically put him in this position to go visit his sick mother. So he says, okay, you can't do this. And then now they put him in prison and deny him the benefits that he was eligible for 15 years after the fact. Thank you. Samuel Goh, Jr. Good morning, Your Honors. May it please the Court. My name is Samuel Goh on behalf of the government. And I'd first like to take this opportunity to address some of Petitioner's points. The agency agreement is a settlement agreement, and it's governed by contract law. Therefore, we should be looking towards the plain language in the agency agreement, specifically paragraph 2. Class members encompasses registered class members. It does not make the distinction between unregistered class members and registered class members. It just says class members. Therefore, pursuant to the plain language of paragraph 2, he was rendered ineligible for benefits when he was apprehended at the time of entry on January 20th, 1994. Now, he was apprehended solely because he didn't have the papers. Is that correct, that he had requested and the government denied him, so he tried to come back into the country without the papers? Yeah, he did not have the papers. What was the basis for denying him the papers? Your Honor, it was just he applied for advanced parole, and it was denied. I don't know the exact reasons, but his reasoning for getting parole documents were not granted. Is there any law that permits us to go behind why he wasn't given permission? How does that fit into the calculus here? That doesn't fit into the calculus here. I'm just wondering if it had anything to do with the ABC registration or his in absentia deportation. Well, I mean, the reason that paragraph 2 is What? Well, the reason that paragraph 2 is in that case is to make sure that the people that qualify for benefits under this agreement remain in the United States so they can get their denotation. So they want to keep that as part of the whole program under the settlement, that they stay in the United States and proceed further? Well, that's the purpose of paragraph 2. With regards to Flutie, I believe the Court is correct. He does not qualify, even if we were to apply, regarding the third element. He was denied his he did apply for travel documents, showing that he did intend to make a departure that was disruptive of his residential period. And when he did come back, well, let me back up. It was denied. His advance pro was denied on December 27th. And regardless of that denial, he got the denial and he left that same day on December 27th, knowing full well that his departure would be disruptive and would divest him of benefits of the ABC agreement. So that deprives him of the benefits of the ABC agreement? Yes, it does. Okay. With regards to the Morales case, there's a clear distinction here because Morales, the issue was whether the Well, if he hadn't got caught coming back in, then you wouldn't know that, and so then he would still be able to claim his stay. No one would know about it, right? Well, if he was not apprehended at entry, he wouldn't have been divested of benefits. So he rolled the dice? Yes, he did. Well, I think more than rolled the dice. He intentionally ignored Well, I mean, you can't do that. Okay. And if you're trying to get the benefits of a program or a settlement and just get the benefits of Nicara, you need to follow the rules, right?  That's basically what happened. He didn't. And the reason for the inextension of due process, his reason for not getting to the getting to his hearing was that he was not allowed in the building. He says he was not allowed in the building, and you argue that that's implausible. Yes. And the reason why we find it implausible is that the building which housed the Immigration Court had open access. Which building was that? Is that the one downtown? I believe so. Downtown? With regards to the administrative closure, I guess I should first say that the issue of administrative closure would not – it's not really an issue at this time because he's already had his benefits, his eligibility for benefits decided and been found ineligible. That's what I don't understand. He believes that getting administrative closure under ABC Paragraph 19 would somehow help his asylum case? Yes, but in fact, it does not help this cause because Paragraph 19 simply says that a class member whose proceeding was commenced after November 30, 1990, which is this case, would not have his case automatically administratively closed, but that individual may ask the Immigration Court or the Board to administratively close his case. So he needed to take the affirmative action of asking the Immigration Court. And he did appear before the Immigration Court four times without appearing for the fifth time. And at no time did he ask for administrative closure of the case. Does the government have to consent to that for administrative closure? If a party asks, does the government have to consent for a court to do that? Typically, yes. Both parties would have to consent. But I guess he's arguing that Suze Sponte, the court, just should have done it when he wasn't there. Right? Yes. But his proceeding was after November 30, and therefore it is not subject to automatic administrative closure. Okay. With regards to Morales, the issue with Morales was whether Morales was an ABC class member. It had nothing to do with the benefits. Here we are dealing with the benefits. He is an ABC class member, but he was rendered ineligible for benefits pursuant to Paragraph 2 when he was apprehended at entry. Moreover, in Morales, the petitioner affirmatively asked for administrative closure. In this case, there was no affirmative step of requesting administrative closure when he had multiple opportunities to do so. Finally, with regards to his ---- So with all of the obstacles here, what would have to happen for a petitioner to get relief? What would the court have to do? Your Honor, I would say that ---- Well, you're going to say we can't do it. But just tell me, what would the court have to do to, you know, what would have to happen for him to be eligible? I think, one, you would ---- the court would have to find that there was an abuse of discretion, which is a very high standard in terms of finding that the factual findings of the Immigration Court and the Board were contrary to the evidence provided. Now, the evidence provided was solely the declaration of the plaintiff, and it was found not to be credible. And I think that's a very high ---- That's on the motion to reopen. That's on the motion to reopen. With regards to the benefits, this court would have to decide whether the agency's finding that he was ineligible for benefits was ---- should not be given deference. Well, it's not supported by substantial evidence. And wouldn't we have to extend Flutie and waive the third element? You would have to assume that the asylum office and the district court did not decide Flutie correctly, and that the ABC agreement actually did contemplate Flutie to apply, even though there's no language saying that the parties ever thought that Flutie would apply, and that even the criteria that Flutie sets out, that he would meet all three criteria, when, in fact, he does not because he intended a departure by applying for travel documents. That shows clearly what his intent was. Your Honor, I'd like to briefly address Plaintiff's vesting argument. He states that the rights to the ABC agreement were vested in his client, or in himself, at the time he registered for the agreement. Now, that contradicts the plain language of Paragraph 2. It doesn't say that, you know, Guatemalans or Salvadorans or persons, apprehended at the time of entry. It says class members. So, of course, there is the distinction that there are certain people, Guatemalans and Salvadorans, who comprise the class for the ABC settlement, and that those class members that are apprehended at the time of entry would be divested of benefits from the ABC agreement. So they do remain class members, but they are not eligible to receive the benefits. And in this case, this is the situation that we have here. He was a class member. He did leave the country. He did subject himself to Paragraph 2, and he is no longer eligible for benefits under the ABC agreement. All right. Thank you, counsel. Reyes-Escobar v. Holder is submitted. Slayman v. Holder is submitted. And we'll take up the trustees of Southern California Bakery Brewery Security Fund v. Middleton.
judges: Sedwick, Wardlaw, Callahan